**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREA TORRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 01318 |
| | ) | |
| STATE OF ILLINOIS DEPARTMENT OF | ) | Judge John J. Tharp, Jr. |
| EMPLOYMENT SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Andres Torres, alleges that her former employer, the State of Illinois Department of Employment Security, ("IDES" or the "Agency") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") by discharging her from employment based on her national origin, her sex, and in retaliation for filing a charge with the Equal Employment Opportunity Commission (EEOC). IDES now moves for summary judgment. For the following reasons, IDES's motion is granted.

## BACKGROUND[1]

IDES is a state agency organized under the law of the state of Illinois. ISOF ¶ 2. The Agency provides unemployment insurance and employment services for workers, job seekers,

---

[1] The Court takes the following facts from the IDES's Statement of Material Facts (Dkt. 51) ("ISOF"), where undisputed, Torres's Response to IDES's Statement of Material Facts and Statement of Additional Material Facts (Dkt. 52-2) ("TSOF"), and IDES's Response to Torres's Statement of Additional Facts (Dkt. 54) (I Resp.).

and employers. ISOF ¶ 2. Torres is a female whose national origin is Mexico. ISOF ¶ 1. She has worked for IDES since March 2002 until the present.[2] ISOF ¶ 1.

The IDES Procedures Manual contains a Code of Ethics, applicable to all IDES employees. ISOF ¶ 7. Subsection 1019.505 relates to "Personal Profit/Prestige," and states, "Department employees are not to use their official position and/or status to exert influence to obtain monetary or non-monetary consideration, profit, or prestige for themselves or for others." ISOF ¶ 8. Subsection 1019.551, entitled "Courtesy: The Public, Co-Workers and Supervisors," states, "All IDES employees shall conduct themselves in a courteous and professional manner when dealing with the general public and with co-workers . . . , and shall at all times conduct themselves so as not to bring IDES into disrepute." ISOF ¶ 7. The following section, "Personal Conduct/Workplace Violence," notes, "Physical attacks, threats, intimidation, or harassment are expressly forbidden and will not be tolerated. Employees who commit such acts will be subject to discharge." ISOF ¶ 11; *see also* Dkt. 51-1, Ex. C at 1019.552.

IDES employees are also subject to the Illinois Department of Central Management Services' (CMS) Personnel Rules. ISOF ¶ 13. The section on "Progressive Corrective Discipline" explains:

> Unless grounds clearly are present warranting immediate discharge or suspension pending decision on discharge, employees shall be subject to corrective discipline progressively utilizing counseling, warnings, and/or suspension, as the facts and circumstances dictate, prior to discharge. If an employee's work or work-related conduct remains unacceptable after the application of progressive corrective discipline, such employee may be discharged in accordance with the appropriate rules.

---

[2] IDES terminated Torres on May 23, 2008. In March 2009, the Illinois Civil Service Commission reversed the discharge and reduced the discipline to a 60-day suspension. ISOF ¶ 69.

ISOF ¶ 13. The American Federation of State, County and Municipal Employees' (AFSCME) contract with the state of Illinois (to which Torres is subject as a union member) also requires progressive discipline: "include[ing] only the following: a) Oral reprimand [ ]; b) Written reprimand; c) Suspension (notice to be given in writing); and d) Discharge (notice to be given in writing)." ISOF ¶ 14.

Over the course of her employment with IDES, Torres worked at three different office locations. She began at the Addison office in March 2002 as an Employment Security Program Representative. ISOF ¶ 15. While working at the Addison office, Torres received an oral reprimand for unprofessional conduct "on numerous occasions throughout the day on Thursday February 19, 2004, creating disharmony and dissension amongst [her] coworkers, disrupting the workflow and failing to provide service to the claimants."[3] TSOF ¶ 16. The oral reprimand was later reduced to documented counseling through a grievance resolution process. ISOF ¶ 16.

A few months later, IDES issued Torres a written reprimand for violating the Code of Ethics section on Personal Conduct/Courtesy and for unauthorized use of the Agency's email system for non-work related purposes.[4] TSOF ¶ 19. Torres accidentally copied a co-worker,

---

[3] Torres does not dispute that she received an oral reprimand but disputes "the veracity of the claims purported by the document." TSOF ¶ 16. IDES argues that the veracity of the various disciplinary documents and witness statements are not at issue because these documents "are not offered for the truth of the matter asserted, but because of the effect they had on Defendant." Reply at 3 n.2, Dkt. 53. The Court agrees. As discussed further *infra*, where Torres disputes the facts of a particular incident but does not dispute that the report was made or disciplinary action was taken, she has not pointed to a genuine factual dispute preventing summary judgment. Moreover, Torres fails to cite support for her disagreements with IDES's Statement of Facts as required under LR 56.1(b)(3)(B). Her failure to cite any support is therefore considered assent to IDES's statement of that fact. *See Berry v. Chicago Transit Auth.*, 788 F. Supp. 2d 756, 763 (N.D. Ill. 2011) (*citing Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998)) ("An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate.").

[4] Torres disputes that she used the Agency's email system for non-work related purposes but does not cite any support for this disagreement. TSOF ¶ 19.

Chaquita Harris, on an email Torres sent to another co-worker from her IDES email account. ISOF ¶ 20. The email stated that Torres's manager and supervisor were "UP TO NO GOOD TRYING TO COVER THERE SELVES. THIS HAS SOMETHING TO DO WITH MY COMPLAINT WITH HR." ISOF ¶ 20. When she realized her mistaken inclusion of Harris, Torres sent Harris an email stating, "THE EMAIL THAT WAS MISTAKENLY MAILED TO YOU IS CONFIDENTIAL AND A PRIVATE CONSERVATION (sic) BETWEEN DEWITT AND MYSELF SHOULD YOU USE IT IN ANY WAY SHAPE OR FORM YOU WOULD BE INVADING MY PRIVACY. YOU HAVE BEEN WARNED!!" ISOF ¶ 21. After receiving this email, Harris contacted the manager of Labor Relations, explaining via email:

> I was threatened by a co-worker. I go to lunch alone mostly and leave alone in the evening. Since these events occurred, I ask people to go with me to the bathroom and lunch area. The person in question appears to be very volatile. I also know that she falsifies things. I am extremely uncomfortable and concerned about my safety-both inside the office and the parking lot.[5]

TSOF ¶ 22. The written reprimand Torres received for this incident noted, "As a matter of record you received a counseling for unprofessional conduct issued on March 4, 2004. If there are similar occurrences, you will be subject to more severe disciplinary actions, up to and including your discharge from employment." ISOF ¶ 23.

In 2004, Torres requested and received a transfer to the Maywood IDES office. ISOF ¶ 24. While working at the Maywood office, Torres received counseling from her supervisor for failing to service a client.[6] TSOF ¶ 25. Shortly thereafter, in December 2005, Torres bid on a

---

[5] Torres does not dispute the content of Harris's email to management but disputes, without record support, that she threatened Harris, that she is volatile, and that she has falsified things. TSOF ¶ 22. In her deposition, Torres admitted that her email to Harris was not an appropriate way to communicate with a co-worker. ISOF, Ex. B. 100:14-17.

[6] Torres does not dispute that she received counseling but disputes, without record support, that she did not service a client. TSOF ¶ 25.

position in the Bolingbrook office and transferred to that office in January 2006. ISOF ¶ 27. At the Bolingbrook office, Torres reported directly to her supervisor, Art Welch, and reported indirectly to the office manager, LouDawn Howard. ISOF ¶ 29.

Torres received an additional written reprimand for events that occurred on October 27, 2006. The notice of the disciplinary meeting that Torres received on December 19, 2006 stated:

> [O]n October 27, 2006 at about 12:00 p.m., you approached your supervisor, Mr. Welch, and informed him that you were about finished with your work. Mr. Welch informed you that he was going to lunch at 1:00 p.m. and upon his return, he would give (sic) appeals to process for the rest of the day. After Mr. Welch left, you approached another supervisor, Mr. Bojansky around 1:00 p.m. and asked him for work. Mr. Bojansky informed you that you needed to wait until your immediate supervisor returns from lunch. You then left the office and did not return that day. Further, you did not contact your supervisor prior to leaving the office nor did you receive any management approval for your absence. Therefore, your absence was unauthorized.[7]

TSOF ¶ 30; *see also* Torres Dep. at 136:7-10, Dkt. 51, Ex. B. The written reprimand stated that Torres had violated the IDES Code of Ethics section on Failure to Follow Supervisory Directives and Insubordination.[8] TSOF ¶ 31.

On November 14, 2006, Torres emailed Howard that she wished "to file a grievance against Art Welch for harassment 11/04/2006 during non working hours @ life time health club." ISOF ¶ 32. Torres stated that she also informed Laura Crivlare, the manager of Labor Relations, about her complaints against Welch on December 4, 2006. ISOF ¶ 32; I Resp. ¶ 92.[9]

---

[7] Torres does not dispute that she received a written reprimand but disputes, without record support, the facts underlying the reprimand. TSOF ¶ 30.

[8] Torres does not dispute that she received a written reprimand but disputes, without records support, the facts underlying the reprimand. TSOF ¶ 31. Torres received the written reprimand for this incident on April 2, 2007. TSOF ¶ 101.

[9] The majority of Torres's citations in her Statement of Additional Facts are to inadmissible evidence (unauthenticated documents, hearsay, etc.) that cannot be considered in a summary judgment motion. *See Visser v. Packer Eng'g Associates, Inc.*, 924 F.2d 655, 659 (7th

Welch denied Torres's allegations. ISOF ¶ 33. That same day, Beth Denault, Acting Regional Manager, directed Torres to report to Welch (Torres had temporarily been reporting to Howard for the previous two weeks). I Resp. ¶ 92. Torres also reported to Howard and Crivlare that Welch "threatened her with discipline" for speaking to IDES's EEO office, Carlos Charneco. I Resp. ¶ 93.

In December 2006, Crivlare emailed Torres regarding the tone of emails Torres had sent to her supervisor, Welch. TSOF ¶ 34. Crivlare stated:

> During work time, Art can ask you what you are doing/working on at any time. If you cover the material or computer screen or turn off your monitor, Art can ask or direct you to show him what you are covering. If you refuse you can be held accountable for your insubordination. Once again, the computer, phone, etc. (including the email system) is not your personal property, it is the property of the State of Illinois . . . Further the tone of your email is disrespectful. Again, Art has the right as well as the responsibility to remind you of the proper/permissible use of the computer. [10]

TSOF ¶ 34.

On January 26, 2007, Torres received a notice for a pre-disciplinary meeting regarding incidents that occurred on January 17, 2007. The notice stated:

> On January 17, 2007, at approximately 2:45 p.m., you displayed disruptive, discourteous and unprofessional conduct when you approached your supervisor, Mr. Welch, and in a loud and confrontational manner questioned the location of the claimant, Maureen A.'s file. . . . At that point, you began swinging your hands and in an extremely loud and angry tone yelled, "You guys do not follow rules and you have no right taking any files off my desk – those are my documents." Mr. Welch explained to you that the adjudication files were not your property, but rather the

---

Cir. 1991) ("[I]f not admissible at trial neither is it admissible in an affidavit used to support or resist the grant of summary judgment."). Because the Court is granting summary judgment for IDES regardless of the veracity of these additional statements, however, it will note Torres's additional factual assertions.

[10] Torres does not dispute the content of Crivlare's email but disputes, without record support, the truth of the matter asserted in the email. TSOF ¶ 34.

property of the State of Illinois . . . . Following his explanation, you continued yelling "You have no right to take any files from my desk." On the same business day, at approximately 3:00 p.m., Mr. Welch received a call from claimant Maureen A. in regards to her scheduled adjudication interview at 2:45 p.m. Mr. Welch placed the (sic) Maureen A. on hold and approached you for an explanation as to why you failed to contact the client as scheduled. . . . [Y]ou again in the presence of co-workers and the public became very angry and hostile, while swinging your arms wildly you yelled, "You do it – I'm not doing it. . . . You get out of my face."[11]

TSOF ¶ 35. Welch and three of Torres's co-workers who witnessed the incident wrote statements accompanying the meeting notice. TSOF ¶ 36. Sandra Lichner's statement noted that "Andrea began to yell at Art and started waiving material in her hands" and that "this has happened at least twice before with Andrea yelling at Art."[12] TSOF ¶ 37. Heather Allen's statement read, "Andrea Torres, out of nowhere, starting (sic) screaming at our adjudication supervisor, Art Welch . . . She then rudely and aggressively yelled at a claimant on the phone a short time later . . . And, she verbally attacked Art again the same day, around 3:10pm. It was so shocking . . . She was of a violent like nature, swinging her arms as if she was going to assault the supervisor. Unfortunately, this has happened before."[13] TSOF ¶ 38. Garry Wilson wrote that Torres's manner "was extremely adversarial and much more vociferous than was necessary in light of their relative proximity."[14] TSOF ¶ 39. Labor Relations Manager Crivlare issued Torres a three-day suspension in March 2007 for this incident. ISOF ¶¶ 40-41. Suspension is the next level of

---

[11] Torres does not dispute the contents of the notice but disputes, without record support, the characterization of her actions. TSOF ¶ 35.

[12] Torres does not dispute the contents of Lichner's statement but disputes, without record support, the facts underlying the statement. TSOF ¶ 37.

[13] Torres does not dispute the contents of Allen's statement but disputes, without record support, the facts underlying the statement. TSOF ¶ 38.

[14] Torres does not dispute the contents of Wilson's statement but disputes, without record support, the facts underlying the statement. TSOF ¶ 39.

progressive discipline after written reprimands, of which Torres had previously received two. ISOF ¶ 41.

On May 29, 2007, Torres filed a charge of discrimination with the EEOC, alleging that IDES had discriminated against her on the basis of her sex and national origin, and retaliation. ISOF ¶ 44. Torres's retaliation claim in this lawsuit is based on her filing of this 2007 EEOC charge. Compl. ¶¶ 9(h), 12(g). Torres's 2007 EEOC charge recounted alleged instances of sexual harassment by Welch in 2006:

> [O]n September 23, 2006, Arthur Welch approached me near the hot tub in Life Time Health Club, started to talk about personal information such as who am I with, while staring at my breasts in my bathing suit during non-working hours. His penis gets raised through his bathing suit.
>
> On October 29, 2006 Arthur Welch harassed me during non-working hours at the Life Time Health Club. He approached me and stated to talk about work related issues and kept asking me where I was going on October 30, 2006, the day I was pre-approved on a day off, prying into my personal life.

ISOF ¶ 44 n.5. Torres's retaliation charge claimed that Welch assigned her more work than her co-workers, once refused to give her the over-time sign in sheet, required Torres to provide verification of her sick leave since she had exhausted all of her time off, and altered her performance evaluation from "meets expectations" to "needs improvement" on productivity and use of time. I Resp. ¶¶ 84, 88, 90, 103. The EEOC eventually issued a notice of right-to-sue letter, "determining it was unable to conclude that the evidence established violations of Title VII." ISOF ¶ 44 n.5.

In June 2007, IDES received a letter from claimant "Nancy J." complaining about Torres's behavior during an interview conducted on May 29, 2007. The letter stated:

> I am writing regarding a very degrading experience I have had to go through during my unemployment with one of your adjudicators, Ms. Andrea Torres. . . . She was loud and shouting into the phone . . . . She was just so nasty, rude, pushy and it made me cry for hours after her put down and dehumanizing session.[15]

TSOF¶ 45. The letter further noted that Nancy J. called to talk to a supervisor and spoke to Welch and that "[he] reviewed my claim, called me and released the payment the next day. I had to wait longer than anyone else due to Ms. Torres who is a very angry person with a lack of professionalism."[16] TSOF ¶ 46.

On August 20, 2007, LouDawn Howard took a statement from claimant "Marva B." TSOF ¶ 47. The statement noted that Torres had called Marva to discuss her claim. TSOF ¶ 47. When Marva asked Torres "to hold so [she] could get rid of [another incoming] call," she "heard Ms. Torres make a statement 'That's why you lost your last job, placing calls on hold,'" then the call disconnected.[17] TSOF ¶ 47. Marva further explained that she called back to speak to Torres about her claim, but Torres kept asking her to fax a letter or to send an email about what had happened on the first call that morning.[18] TSOF ¶ 48.

Torres received a notice of a pre-disciplinary meeting on November 15, 2007, regarding the complaints from Nancy J. and Marva B. ISOF ¶ 49. Crivlare approved a seven-day suspension for Torres, noting the increasingly progressive discipline Torres had already received—written reprimand followed by a three-day suspension—and that "[a]ny similar

---

[15] Torres does not dispute the contents of Nancy J.'s letter but disputes, without record support, the facts underlying the letter. TSOF ¶ 45.

[16] Torres does not dispute the contents of Nancy J.'s letter but disputes, without record support, the facts underlying the letter. TSOF ¶ 46.

[17] Torres does not dispute the contents of Marva B.'s statement but disputes, without record support, the facts underlying the statement. TSOF ¶ 47.

[18] Torres does not dispute the contents of Marva B.'s statement but disputes, without record support, the facts underlying the statement. TSOF ¶ 48.

conduct in the future will result in more-severe disciplinary action, up to and including discharge from employment." ISOF ¶ 50.

The incident leading to Torres's termination took place on December 28, 2007. Torres went to the Bolingbrook Currency Exchange to have her divorce papers notarized. ISOF ¶ 51. Because Torres was "driving on a ticket," she was unable to provide photo identification when asked for it at the Currency Exchange. ISOF ¶ 51. Instead, Torres handed the Currency Exchange employees, Rosa Rodriguez and Esmerelda Carrera, her IDES business card. ISOF ¶¶ 51-52. The employees later contacted IDES and provided a written statement of what next occurred at the Currency Exchange. TSOF ¶ 56. The statement read:

> On Friday December 28, 2007 Andres Torres came into the Currency Exchange in Bolingbrook to request notarization of a document. When we advised her that we would need some identification with a picture on it, she got very belligerent and hostile telling us we should notarize the document anyway. When we refused, she insisted on speaking to the supervisor who told her that a picture identification was necessary. At that point she threatened that if any of us ever came to the unemployment office in Bolingbrook we would be in trouble and that she was a supervisor there. I don't think that a State Employee should be threatening other people like that.[19]

TSOF ¶ 57. Upon learning of the statement, Torres went to the Bolingbrook Currency Exchange on at least two occasions to talk to the women and to bring them a dozen roses. ISOF ¶ 59.

On February 27, 2008, the women from the Currency Exchange wrote a statement that they were withdrawing their complaint against Torres "with the understanding that is (sic) would be over and done with and nothing else comes of this. Against us."[20] TSOF ¶ 60. Welch spoke

---

[19] Torres does not dispute that the Rodriguez and Carrera's statement was attached to the pre-disciplinary meeting notice but disputes, without record support, the facts underlying the statement. TSOF ¶ 57.

[20] Torres does not dispute the content of Rodriguez and Carrera's statement but disputes "any construction or meaning of said statement that infers or suggests that she threatened the

with Rodriguez about withdrawing the complaint and documented their conversation. The statement, which Rodriguez signed, explained, "Andrea had come to see them several times to ask them to withdraw their complaint . . . Andrea told them that she was having a very hard time and was going through a divorce and had filed complaints against people and this would not look good . . . Rosa did affirm the fact that Andrea did threaten to deny them benefits if ever they were to come to the unemployment office and file for benefits and that Andrea was a supervisor at the Bolingbrook office."[21] TSOF ¶ 62.

On April 16, 2008, Crivlare sent Torres a notice of pre-disciplinary meeting for Torres's conduct after the Currency Exchange incident. TSOF ¶ 64. The notice cited "Gross Misconduct Intimidating a Witness, Impeding an Investigation" and stated that Torres "harassed the complaining witness in attempt to further influence her to withdraw her complaint."[22] TSOF ¶ 64. After the pre-disciplinary meeting, IDES recommended to CMS that Torres be discharged for cause based on her violation of the IDES Code of Ethics. ISOF ¶ 66. Crivlare had the "ultimate say" with respect to terminating Torres. ISOF ¶ 67. IDES officially discharged Torres on May 23, 2008. TSOF ¶ 123.

Torres filed a charge of discrimination against IDES with the Illinois Department of Human Rights (IDHR) (Charge No. 2009CF1286) on October 30, 2008. ISOF ¶ 4. The charge alleged: (1) IDES discharged Torres based on her national origin (Mexico); (2) IDES discharged Torres based on her sex (female); and (3) IDES discharged Torres in retaliation for filing a

---

women from the Bolingbrook Currency Exchange in any manner." TSOF ¶ 60. Again, Torres's disagreement does not cite to any record support as required per LR 56.1(b)(3)(B).

[21] Torres disputes these facts but offers no record support. TSOF ¶ 62.

[22] Torres disputes that she harassed the complaining witness but offers no record support. TSOF ¶ 64.

sexual harassment claim with the EEOC in January 2007.[23] ISOF ¶ 5. More than three years later, on November 21, 2011, the EEOC issued a notice of right to sue based on the 2008 IDHR charge. Compl. at 7, Dkt. 1. On February 24, 2012, Torres filed a complaint in this Court against IDES alleging the same three charges of employment discrimination enumerated in her IDHR charge.[24] ISOF ¶ 3. She attached a copy of the IDHR charge to her complaint, incorporating the narrative as the factual allegations supporting her discrimination and retaliation claims.[25] TSOF ¶ 4.

## DISCUSSION

Torres's Title VII claims are based on her 2008 charge of discrimination filed with IDHR, in which she alleges discrimination based on national origin and sex and retaliatory discharge. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding IDES's motion for summary judgment, the Court construes all facts and inferences in favor of the nonmoving party. *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). If the moving party has demonstrated the absence of a disputed material fact, then the burden shifts to the nonmoving party to "provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Based on the undisputed facts in the record, Torres

---

[23] Torres's IDHR charge underlying the complaint states that she filed the EEOC charge alleging sexual harassment in January 2007. IDHR Charge ¶ III.B.1. However, she actually filed the charge on May 30, 2007. TSOF Ex. I.

[24] Any judicial claim covered by an EEOC charge must be filed within 90 days of receipt of the right-to-sue letter. The complaint alleges that Torres received the letter, which was dated November 21, 2011, on November 26, 2011. IDES does not challenge this allegation or the timeliness of the complaint.

[25] Torres disputes, without any support, that the "narrative of the Charge [contains] the sole factual allegations supporting her discrimination and retaliation claims." TSOF ¶ 4.

has not met her burden to provide evidence of specific facts creating a genuine dispute. Summary judgment is therefore granted to IDES.

## I.     National Origin Discrimination

Torres has conceded that her claim for discrimination based on national origin should have been a claim for discrimination based on race. Resp. at 9, Dkt. 52-1. She admits that she did not make a timely amendment of the Complaint to address this error and provides no argument on this claim. *Id*. Summary judgment is therefore granted to IDES on this claim.

## II.     Sex Discrimination

Before addressing the merits of the sex discrimination claim, the Court notes limitations on filing Title VII claims. To bring an action under Title VII, a person must first file a charge with the EEOC and receive a right-to-sue letter. *See* 42 U.S.C. § 2000e–5(f)(1)(A). Generally, a plaintiff "may not bring claims under Title VII that were not originally included in the charges made to the EEOC." *Moore v. Vital Products, Inc.*, 641 F.3d 253, 256 (7th Cir. 2011) (*quoting Sitar v. Ind. Dep't of Transp.,* 344 F.3d 720, 726 (7th Cir. 2003)). There is an exception for charges that are "reasonably related to the allegations of the EEOC charge and growing out of such allegations." *Moore*, 641 F.3d at 256. To be sufficiently related, the relevant claim and EEOC charge "must, at minimum, describe the same conduct and implicate the same individuals." *Id*. at 257 (*quoting Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir. 1994)). Allowing a complaint to include allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role. *Cheek*, 31 F.3d at 500. Whether the claim is within the scope of the EEOC charge is a question of law. *Conner v. Illinois Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005).

The IDHR charge underlying Torres's complaint alleges discharge based on "sex, female." IDHR Charge ¶ II.A, Dkt. 1. The relevant factual narrative for this charge states:

1.   My sex is female.
2.   I began my employment with Respondent on March 2, 2002. My job performance met Respondent's legitimate expectations.
3.   On May 23, 2008, I was discharged by Art Welch, Supervisor. The reason Welch gave for discharging me was that I intimidated an individual to withdraw her complaint against me.
4.   Similarly situated male employees, Joe Campbell and Gary Wilson, were treated differently under similar circumstances.

IDHR Charge ¶¶ II.B.1-4. The language of the IDHR charge tracks the elements of an indirect method of proving a prima facie case of sex discrimination: (1) plaintiff was a member of a protected class (*i.e.* female); (2) plaintiff was meeting her employer's legitimate expectations; (3) plaintiff suffered an adverse employment action; and (4) at least one similarly situated employee not in plaintiff's protected class was treated more favorably. *See, e.g.*, *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004).

Torres's complaint similarly alleges discrimination based on sex. Compl. ¶ 9(g). In her response to IDES's summary judgment motion, however, Torres solely argues sexual harassment based on a hostile work environment. *See* Resp. at 9-16. It is true, as Torres maintains, that a plaintiff "may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Moser v. Indiana Dep't of Corr.*, 406 F.3d 895 (7th Cir. 2005). But Torres did not allege sexual harassment in the IDHR charge underlying this complaint and "[o]rdinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination." *Cheek*, 31 F.3d at 503. As the Seventh Circuit explained in *Cheek*,

> As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that are not included in her EEOC charge. . . . For allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge. . . . Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination.

31 F.3d at 500-01. *See also, e.g., Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000) (rejecting sexual harassment claim not fairly presented in EEOC charge); *Jayne v. ABF Freight System, Inc.*, 202 F.3d 273, 1999 WL 1075159 (7th Cir. 1999) (same). The inverse is also true: an EEOC charge based on sexual harassment does not permit a judicial claim asserting sexual discrimination in the termination of employment. *See Moore v. Vital Products, Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011).

It cannot be said that Torres's sexual harassment claim is sufficiently related to the claim of sex discrimination described in the IDHR charge, nor can her claim be described as "growing out of the allegations" set forth there. The conduct alleged in Torres's summary judgment response—that Welch invited her on his boat, approached her twice at the Life Time Fitness facility, and stood too close to her on three occasions—is entirely unrelated to the facts asserted in her IDHR charge. *See* Resp. at 9 (argument heading: "Sexual Harassment Based on Hostile Environment"); 10, 13-14; *cf. Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). The only reference to "sexual harassment" in the IDHR charge is part of Torres's retaliation claim, alleging that she was discharged for filing a previous EEOC charge

of sexual harassment in 2007. Torres never pursued that claim,[26] and her subsequent 2008 IDHR charge presented no claim that she was subject to sexual harassment after the incidents she reported in her original claim.

As a matter of law, then, Torres's sexual harassment claim is outside the scope of her 2008 IDHR charge. Torres has therefore failed to exhaust her administrative remedies with respect to her claim of sexual harassment, and it is not properly before the Court. Because Torres made no other arguments regarding her sex discrimination claim, the Court grants IDES's motion for summary judgment on the sex discrimination claim.

## III.    Retaliatory Discharge

Torres claims that she was discharged in May 2008 in retaliation for filing an EEOC charge of sexual harassment in May 2007. IDHR Charge ¶ III. Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. To establish a prima facie case of retaliation, a plaintiff may use either the indirect or direct method of proof. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008).

### A.    Indirect Method of Proof

Under the indirect method of proof, a plaintiff establishes a prima facie case of discrimination by showing that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; (3) no other similarly situated employees who engaged in the protected activity suffered adverse employment actions; and (4) she was performing her job

---

[26] Although Torres did receive a notice of right-to-sue from the EEOC on September 28, 2009 for the 2007 sexual harassment charge, the 90-day limit in which she could have filed suit for that charge expired long ago. *See* Reply, Ex. A, Dkt. 53.

satisfactorily. *See Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 782 (7th Cir. 2006).

Torres does not attempt to establish her retaliation claim under the indirect method. *See* Resp. at

16 (reciting elements of direct method only). Accordingly, Torres has waived this argument. *See*

*Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an

argument—as the [plaintiff has] done here—results in waiver.").

### B. Direct Method of Proof

To establish retaliation under the direct method of proof, a plaintiff must provide

evidence that (1) "[she] engaged in a statutorily protected activity, (2) that the defendants

subjected [her] to an adverse employment action and (3) that a causal connection exists between

the two events." *Gates*, 513 F.3d at 686 (*quoting Treadwell,* 455 F.3d at 781) (brackets in

original). To establish a causal link, the plaintiff must show that her protected activity "was a

but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v.*

*Nassar*, 133 S. Ct. 2517, 2534 (2013). That means that Torres must adduce evidence sufficient to

convince a reasonable trier of fact, by a preponderance of the evidence, that she would not have

been terminated had she not alleged that Welch sexually harassed her. *Id.* at 2525.

Torres satisfies the first two requirements of this standard but fails the third. Complaining

to an employer about sexual harassment is a protected activity under Title VII. *See Bernier v.*

*Morningstar, Inc.*, 495 F.3d 369, 375 (7th Cir. 2007); *see also Tomanovich v. City of Chicago*,

457 F.3d 656, 663 (7th Cir. 2006) (noting that filing a charge of discrimination with the EEOC

satisfies the first element of the direct method of proof). And IDES does not contest, of course,

that Torres's ultimate termination was an adverse employment action. As to the third element,

causation, however, Torres has failed to prove a genuine dispute of material fact.

Establishing a causal link may be done "via direct evidence, which would entail something akin to an admission by the employer ('I'm firing you because you had the nerve to accuse me of sex discrimination!')." *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 388 (7th Cir. 2012). Torres has provided no such direct evidence here. Causation also may be established via circumstantial evidence, however, such as (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of causation might be drawn, (2) evidence showing that the employer systematically treated other, similarly situated . . . employees better, or (3) evidence that . . . the employer's justification [for the adverse action was] pretextual." *Id.* at 388-89 (*quoting Silverman v. Bd. of Educ. of City of Chicago,* 637 F.3d 729, 734 (7th Cir. 2011)). These evidentiary categories are not exclusive; the point is that there must be sufficient evidence from which it would be reasonable to infer that the adverse employment action would not have been taken if the plaintiff had not engaged in the protected action.

To establish causation, Torres relies almost entirely on the timing of her complaints of sexual harassment in 2006 and her termination in May 2008. *See* IDHR Charge ¶ III.B.3 ("The adverse action followed my protected activity within such a period of time as to raise an inference of retaliatory motivation."). Torres explains that she reported Welch to her supervisors on December 4, 2006, was disciplined seven times thereafter, and ultimately discharged on May 23, 2008. Resp. at 17-18. A mere temporal link—especially one attenuated over almost a year and a half—is not sufficient to establish the causal connection between the protected act and the adverse employment action. *See, e.g.*, *Garcia v. U.S. Postal Serv.*, 414 F. App'x 855, 858 (7th Cir. 2011) ("We have repeatedly held that a year between the adverse action and the protected

activity—without something more—cannot establish a causal connection."); *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 481 (7th Cir. 2010) ("[A] year is too long in the absence of any other evidence tying the protected activity to the adverse action, [thus plaintiff] has failed to establish the requisite causal connection."); *Clay v. Interstate Nat. Corp.*, 900 F. Supp. 981, 993-94 (N.D. Ill. 1995) *aff'd*, 124 F.3d 203 (7th Cir. 1997) ("If temporal proximity were *per se* sufficient to establish the requisite causal connection, [employers] would be effectively straightjacketed by [an employee's] decision to file a charge of discrimination . . . The law does not require this.").

While Torres notes that she was disciplined a number of times after she reported Welch's alleged harassment, and she denies that she engaged in any misconduct that warranted the disciplinary actions taken, she identifies no evidence other than timing to suggest that any of these disciplinary episodes were the product of retaliatory animus rather than genuine disapproval of Torres's conduct. Timing is an insufficient basis to infer causation for many reasons, and Torres's situation highlights several in particular. The sheer number of disciplinary incidents cuts against her; plainly, IDES did not terminate her at the first opportunity but rather applied progressive discipline consistent with its internal policies. record that shows restraint, rather than alacrity, in responding to continued misconduct provides no support to a claim that the discipline is the product of retaliatory animus. Further highlighting her failure to adduce any evidence of causation is the fact that she also had been disciplined for similar behavior numerous times *before* reporting the alleged sexual harassment. In 2004, while working at the Addison office, Torres was disciplined twice, receiving an oral reprimand (later reduced to counseling) for unprofessional conduct and a written reprimand for personal conduct and unauthorized use of the Agency's email system. TSOF ¶¶ 16, 19. While at the Maywood office in 2005, Torres

received counseling for not servicing a client. TSOF ¶ 25. This disciplinary history preceding any claim of sexual harassment by Torres undercuts Torres's theory that she was disciplined in retaliation for complaining about Welch; this record provides no basis to infer that the cause of the disciplinary actions that followed Torres's harassment report were simply trumped up excuses to retaliate against her.

Torres also ignores that Welch, the object of her sexual harassment claims, did not issue her discipline and that Crivlare, the Labor Relations Manager, had the "ultimate say" with respect to her termination. ISOF ¶ 67. Although Welch filed a statement reporting the January 2007 incident that resulted in Torres's three-day suspension in March 2007, so did three co-workers who witnessed the incident and confirmed Torres's unprofessional behavior. ISOF ¶¶ 36-41. It was Crivlare, moreover, not Welch, who suspended Torres. Crivlare also approved the seven-day suspension in response to the complaints from claimants Nancy J. and Marva B. ISOF ¶¶ 49-50. In the accompanying suspension memorandum, Crivlare reminded Torres of the IDES Code of Conduct and progressive discipline policy, stating "any similar conduct in the future will result in more-severe disciplinary action, up to and including discharge from employment." ISOF ¶ 50. Torres does not explain why Crivlare would retaliate against Torres for reporting sexual harassment by Welch, and there is no evidence in the record to suggest that Welch influenced Crivlare to discipline Torres or to terminate her because of Torres's complaints about Welch. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012) (no circumstantial evidence of retaliation where manager other than plaintiff's direct supervisor, about whom plaintiff had complained, made the termination decision); *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 882 (7th Cir. 2014) (insufficient evidence of retaliation where plaintiff failed to establish that alleged retaliator was involved in decision not to hire her for new position).

Torres cites a number of emails to support her assertion that Welch "had the cooperation and assistance of his superiors" in retaliating against her. Resp. at 18. However, none of these emails are to or from Crivlare nor do they even copy her on the message. Because this evidence does not involve the decision-maker responsible for issuing Torres's discipline, it does not support Torres's theory that Welch influenced management to retaliate against her. Rather, each time Crivlare disciplined Torres, including her discharge, Crivlare acted in response to complaints or statements of third parties—other IDES workers who witnessed Torres's unprofessional conduct, the letters from the claimants complaining about Torres's service, and the statement of the Currency Exchange employees.

That Torres disputes the veracity of the incidents recorded in her disciplinary notices and of the complaints lodged against her by IDES claimants and the workers at the Bolingbrook Currency Exchange does not change the analysis. As an initial matter, Torres offers no factual support or citations to the record to support her disagreements with these statements of fact as required by Rule 56 and Local Rule 56.1. *See* Fed. R. Civ. P. 56; N.D. Ill. R. 56.1(b)(3)(B). In opposing a summary judgment motion, it is not enough to say in your brief, "I dispute that." Under the applicable federal and local rules, the non-movant must identify evidence that creates a material dispute of fact. As the Seventh Circuit has very recently reiterated:

> [T]he obligation of the party opposing summary judgment is to demonstrate that there are one or more such factual disputes . . . by identifying admissible evidence that would permit the trier of fact to make a finding in the non-movant's favor as to any issue as to which it bears the burden of proof. . . . Toward that end, Federal Rule of Civil Procedure 56 demands that the non-movant "cit[e] to *particular parts* of materials in the record" in order to show that there is a genuine dispute of fact between the parties on a relevant point. Rule 56(c)(1)(A) (emphasis ours). Local rules . . . make the particularity requirement even more explicit . . . . We have long sustained "the exacting obligation" such rules impose on the party contesting summary judgment to identify and guide the court to the specific evidence on which it is relying to show that a trial is required.

*Packer v. Trustees of Indiana Univ. Sch. of Med.*, No. 15-1095, 2015 WL 5063202, at *3-4 (7th Cir. Aug. 28, 2015).

Notwithstanding these requirements to identify specific evidence that establishes a material fact dispute, Torres's response fails to cite to record evidence to establish that she did not engage in the misconduct for which she was ostensibly disciplined. To illustrate, IDES SOF ¶ 47 alleges that Howard received a complaint from a claimant named "Marva B." about how Torres treated her during a telephone interview. According to Marva B., when she asked Torres if she could put her on hold briefly to "get rid" of an incoming call, Torres responded by saying, "That's why you lost your last job, placing calls on hold," and then hung on Marva B. In response, Torres does not point to record evidence that disputes this claim; instead, she recites what seems to be her mantra in responding to IDES's Statement of Facts: "Plaintiff does not dispute Facts [sic] #47 to the extent that the above-named claimant provided a statement to LouDawn Howard. Plaintiff disputes the remainder of Facts 47." *See also, e.g.*, Plaintiff's responses to IDES SOF ¶¶ 16, 19, 22, 25, 30, 34, 38-39, 45-46, 48, 56, 60 (conceding existence of complaints concerning her conduct but disputing facts asserted in those complaints without citation to contrary record evidence).

In any event, even if Torres had adduced admissible evidence sufficient to create one or more fact disputes about whether she engaged in the misconduct on which the disciplinary action was ostensibly based, those fact disputes would not save her claim because they would not be material to the question of whether IDES's reasons for disciplining Torres were pretexts for retaliation. The discipline that Torres received while working in the Bolingbrook office was not predicated on complaints lodged by Welch, or Howard, or other IDES supervisors—it was predicated on complaints lodged against Torres by other employees and third parties. These

complaints consisted of the statements of the three IDES co-workers who witnessed Torres's unprofessional conduct, the two letters from claimants Nancy J. and Marva B. complaining about Torres's service, and the statement of the two Currency Exchange employees. The veracity of these third-party statements is not material (no claim is asserted that IDES knew that the claims were false, and the evidence of record uniformly suggests that they were accurate); their relevance lies not in their truth but in the effect they had on IDES. Whether the information IDES relied on is accurate is beside the point. In evaluating pretext, "[t]he question is not whether the employer's stated reason [for taking an adverse employment action] was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015).

To sum up: Torres cannot create a fact dispute about why she was discharged without adducing evidence that IDES would not have credited the accounts of the Currency Exchange workers unless it was seeking to retaliate against her for reporting harassment by Welch. She has not produced a shred of evidence to support such an inference. To the contrary, the only reasonable inference that may be drawn from the evidence is that IDES acted with restraint and diligence in addressing complaints about Torres's conduct. Each time Crivlare received another third-party complaint about Torres alleging a violation of the IDES Code of Ethics, Crivlare followed the IDES policy on progressive discipline, starting with a written reprimand, then the three- and seven-day suspensions, and concluding with Torres's termination. *See* ISOF ¶¶ 7, 11, 13-14.

*       *       *

Because Torres has failed to provide evidence of specific facts creating a genuine dispute, IDES is entitled to judgment as a matter of law. As such, IDES's motion for summary judgment is granted in its entirety and judgment will be entered in its favor.

Dated: September 2, 2015

John J. Tharp, Jr.
United States District Judge